UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: GREGORY PAUL SOFIO,                 No. 22-10049-j7

Debtor.

## MEMORANDUM OPINION

After filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code, Debtor became aware that the largest debt he seeks to discharge is eligible for a chapter 13 super discharge.[1] Debtor hired new bankruptcy counsel and filed a Motion to Convert from Chapter 7 to Chapter 13 ("Motion to Convert"–Doc. 32). Sarah Beans, Yandell Beans, and Patty Lamb (together, "Movants") objected to the Motion to Convert,[2] asserting that Debtor does not meet the eligibility requirements for chapter 13 relief because he had no regular income on the petition date and has noncontingent, liquidated, unsecured debts in excess of the debt limits fixed in 11 U.S.C. § 109(e).[3,4]

The Court held a final, evidentiary hearing on the Motion to Convert and took the matter under advisement. Having considered the evidence in light of applicable caselaw, the Court concludes that Debtor is not eligible to be a chapter 13 debtor because on the petition date the

---

[1] The debt to Sarah Beans, Yandell Beans, and Patty Lamb results from a state court determination of Debtor's liability for violation of state securities laws and would appear to constitute a non-dischargeable debt in chapter 7 under 11 U.S.C. § 523(a)(19). The chapter 13 discharge provision does not exclude from discharge debts of the type described in 11 U.S.C. § 523(a)(19). *See* 11 U.S.C. § 1328(a)(2). The ability to discharge these types of debts in chapter 13 that are non-dischargeable in chapter 7 is known as the "super discharge." *See In re Rouse*, 301 B.R. 86, 89-90 (Bankr. D. Colo. 2003) ("Chapter 13 offers a 'super-discharge' from debts incurred through fraud, as well as other bad acts.").

[2] *See* Creditors' Objection to Debtor's Motion to Convert from Chapter 7 to Chapter 13 ("Objection"–Doc. 38).

[3] All future references to "Code," "Section," and "§" are to Title 11 of the United States Code unless otherwise indicated.

[4] Creditors also assert that Debtor has acted in bad faith, forfeiting his right to convert to chapter 13, citing *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 368-76 (2007). The Court need not reach this alternative argument.

Debtor's noncontingent, liquidated unsecured debts, which include indebtedness under two personal guarantees, exceeded the debt limit fixed in § 109(e). Consequently, the Court will deny the Motion to Convert.

FACTS

Debtor developed commercial properties with Mako Kellman through a company called Anvil Development, LLC, a Washington limited liability company ("Anvil"). Anvil obtained funds from certain people, including Sarah Beans, Yandell Beans, Patty Lamb, Kevin Vo, Alan Zelicoff, and Mary Frederick, for use in Anvil's development of commercial properties.[5]

On November 15, 2017, Mr. Kellman, on behalf of Anvil, executed a Note payable to the order of Kevin Vo in the original principal amount of $60,000 (the "Vo Note").[6] The Vo Note provided for payment of $60,000 in principle plus interest in the amount of $6,000 payable no later than May 15, 2018.[7] If Anvil failed to make the payment required under the Vo Note, the Vo Note provides for interest on the principal and interest amount of $66,000 "from their [sic.] due date until paid at the rate of eighteen percent (18%) per annum."[8] Debtor signed a Personal Guarantee of the Vo Note (the "Vo Guarantee").[9] The Vo Guarantee identifies Mako Kellman and Greg Sofio as "Guarantor" and provides that Mako Kellman and Greg Sofio "personally, severally and jointly unconditionally guarantee the performance of the [Vo] Note[.]"[10] Anvil has made no payment under the Vo Note.

On July 16, 2018, Mr. Kellman, on behalf of Anvil, executed a Note payable to the order of Alan Zelicoff and Mary Frederick in the original principal amount of $251,000 (the

---

[5] *See* Exhibits F, G, and H.
[6] Exhibit G.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

"Zelicoff/Frederick Note").[11] The Zelicoff/Frederick Note provided for payment of $251,000 in principle plus interest in the amount of $5,020.00 if paid no later than September 17, 2018, or, if paid no later than October 17, 2018, payment of $251,000 in principle plus interest in the amount of $7,530.00.[12] If Anvil failed to make the payments under the Zelicoff/Frederick Note, the Zelicoff/Frederick Note provides for interest on principal and interest "from their due date until paid at the rate of Twelve percent (12%) per annum."[13]

Debtor signed a Personal Guarantee of the Zelicoff/Frederick Note (the "Zelicoff/Frederick Guarantee").[14] The Zelicoff/Frederick Guarantee provides:

> In the event that Anvil Development, LLC fails to make any payment to Alan Zelicoff and Mary Frederick, or fails to perform in any manner with regard to said Note between the two entities, the Guarantor [Debtor] does herby promise to make all payments to Alan Zelicoff and Mary Frederick in the same manner as if they were the Maker of said Note.[15]

Anvil did not make any of the payments due under the Zelicoff/Frederick Note.

On April 3, 2020, in an action styled *Sara Beans, Yandell Beans, and Patty Lamb v. Mako Kellman, Gregory Sofio, and Anvil Development, LLC*, Case No. D-202-2019-03797 (the "State Court Action"), the state court entered partial summary judgment against the Debtor and the other named defendants in the State Court Action determining that investment agreements Anvil obtained from Sarah Beans, Yandell Beans, and Patty Lamb violated applicable New Mexico state securities laws.[16] After entry of the State Court Memorandum Opinion, Sarah Beans, Yandell Beans, and Patty Lamb filed a motion for partial summary judgment in the State

---

[11] Exhibit F.
[12] *Id.*
[13] *Id.*
[14] *Id.* (Identifying Mako Kellman and Greg Sofio as "Guarantor").
[15] *Id.*
[16] *See* Memorandum Opinion and Order Granting Plaintiffs' Motion for Partial Summary Judgment ("State Court Memorandum Opinion"–Exhibit H and Exhibit 4).

Court Action requesting damages, including interest, attorney's fees, and costs based on the violation of state securities laws as determined in the State Court Memorandum Opinion.[17] Debtor opposed the Plaintiffs' Motion for Damages.[18]

The day before the scheduled hearing in the State Court Action to determine damages, Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on January 19, 2022. At the time he was represented by attorney James Clay Hume. Debtor's Schedule E/F included the following unsecured debts:[19]

| Creditor | Amount | Nature of Debt |
|---|---|---|
| Dughigg, Cronin, Spring & Berlin, PA (Attorney for Alan Zelicoff and Mary Frederick) | $313,436.14 | Unsecured debt |
| Kevin Vo | $88,173.37 | Unsecured debt |
| Rodey, Dickason, Sloan Akin, and Robb (Attorney for Beans, Beans and Lamb) | $426,084.93 | Unsecured debt |

Debtor's Schedule E/F reflected total unsecured nonpriority debts of $855,069.44.[20] Debtor's Schedule I reported that the Debtor was employed in real estate development, but listed $0.00 monthly income.[21] Debtor was not employed on the petition date. Schedule I reflects gross monthly income for Debtor's non-filing spouse in the amount of $5,410.49 from her employment as a counselor with Rio Rancho Public Schools.[22]

---

[17] *See* Plaintiffs' Motion for Partial Summary Judgment and Supporting Memorandum ("Plaintiffs' Motion for Damages"–Exhibit I and Exhibit 4).
[18] *See* Defendants' Mako Kellman, Gregory Sofio, and Anvil Development, LLC's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Damages, Exhibit 4.
[19] Exhibit 1.
[20] *Id.*
[21] *Id.*
[22] *Id.*

After retaining new bankruptcy counsel, Debtor filed Amended Schedules E/F and I on June 10, 2022.[23] Debtor's Amended Schedule E/F revised the descriptions of the unsecured debts to Mr. Zelicoff, Ms. Fredrickson, Mr. Bean, Ms. Bean, and Ms. Lamb as follows:[24]

| Creditor | Amount | Nature of Debt |
|---|---|---|
| Duhigg, Cronin, Spring & berlin, P.A. (Attorney for Zelicoff and Frederick) | $313,436.14 | Contingent |
| Kevin Vo | $88,173.37 | Contingent |
| Rodey, Dickason, Sloan, Akin & Robb | Unknown | Unliquidated |

Debtor's Amended Schedule E/F reflected unsecured debts in the total amount of $403,984.51.[25]

Debtor's Amended Schedule I reflects that Debtor is employed as a construction manager earning gross monthly income of $10,000.[26] Debtor's Amended Schedule I reflects zero income for the Debtor's non-filing spouse because she did not work as a counselor during the summer months.[27] Debtor started his new job with HZ Ops Holdings, Inc. in June of 2022. His annual salary is $120,000.

---

[23] Exhibits D and E.
[24] Exhibits D and E.
[25] *Id.*
[26] *Id.*
[27] *Id.*

-5-

The total amount due under the Vo Note and Vo Guarantee as of the petition date is $109,679.85.[28] The total amount due under the Zelicoff/Frederick Note and Zelicoff/Frederick Guarantee as of the petition date is $359,420.80.[29]

DISCUSSION

Eligibility to be a debtor under chapter 13 of the Code is defined in § 109(e), which provides, in relevant part:

> Only an individual debtor with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 . . . may be a debtor under chapter 13 of this title.

The unsecured debt limit in § 109(e) is adjusted every three years. 2 Collier on Bankruptcy ¶ 109.06[2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.). As of the date Debtor filed his chapter 7 petition, the unsecured debt limit was $419,275.[30] Debts that are either contingent

---

[28] The Vo Note matured on May 15, 2018 with a total balance of $66,000. Interest at 18% per annum on $66,000 is $11,800 per year. Per diem interest is $32.55.
    May 16, 2018 to May 15, 2019 = $11,880
    May 16, 2019 to May 15, 2020 = $11,880
    May 16, 2020 to May 15, 2021 = $11,880
    Subtotal = $35,640
May 16, 2021 to January 18, 2022 (the day before the petition date) = 247 days x $32.55 per day = $8,039.85
Total due as of the petition date = $66,000 (matured note balance) + $35,640 (3 years of interest) + $8,039.85 (247 days of interest) = $109,679.85

[29] The Zelicoff/Frederick Note matured on October 17, 2018 with a total balance of $258,530. Interest at 12% per annum on $258,530 is $31,023.60 per year. Per diem interest is $85.00.
    October 18, 2018 to October 17, 2088 = $31,023.60
    October 18, 2019 to October 17, 2020 = $31,023.60
    October 18, 2020 to October 17, 2021 = $31,023.60
    Subtotal = $93,070.80
October 18, 2021 to January 18, 2022 (the day before the petition date) is 92 days x $85.00 per day = $7,820.00
Total due as of the petition date = $258,530 (matured note balance) + 93,070.80 (3 years of interest) + $7,820 (92 days of interest) = $359,420.80.

[30] The parties agreed that the applicable debt limit is the limit in effect as of the petition date. Debtor's counsel stated that the applicable debt limit is $465,275. That increased debt limit became effective April 1, 2022, and does not apply to cases filed before April 1, 2022. *See* § 104 (Adjustment of Dollar Amounts).

or unliquidated as of the petition date do not count toward the § 109(e) debt limits. *In re Barcal*, 213 B.R. 1008, 1012 (8th Cir. BAP 1997) ("[Section] 109(e) excludes unliquidated and contingent debts from Chapter 13 eligibility computation.") (citation omitted).

The starting point for evaluating eligibility under § 109(e) is the debtor's schedules and the creditors' proofs of claim. *Barcal*, 213 B.R. at 1015 ("Rather than making final determinations on disputed liabilities, it is appropriate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim . . . .") (citation omitted); *In re Bello*, 609 B.R. 695, 699 (Bankr. E.D. Mich. 2019) ("With respect to the nature and amount of the Debtor's unsecured and secured debts, the Court must look first to the Debtor's schedules."); *In re Garcia*, 520 B.R. 848 (Bankr. D.N.M. 2014) ("[A] debtor's bankruptcy schedules are an important part of the § 109(e) eligibility analysis . . . ."). Yet, the Court "should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim" to adjudicate eligibility under § 109(e). *Barcal*, 213 B.R. at 1015.

Here, Debtor's original Schedules reflected unsecured debts well above the § 109(e) debt limit, but Debtor later amended Schedule E/F to change the nature of the Vo Guarantee and the Zelicoff/Frederickson Guarantee from unsecured to "contingent." Debtor reasons that because none of these parties has sought to collect on the debt, and because Anvil could still pay the debt, the guarantees remain contingent. Debtor's characterization of the Vo Guarantee and the Zelicoff/Frederickson Guarantee as contingent debts is incorrect.

"A debt is noncontingent when all events giving rise to liability occurred prior to the debtor's filing for bankruptcy." *In re Reader*, 274 B.R. 893, 896 (Bankr. D. Colo. 2002) (citing *In re Mazzeo,* 131 F.3d 295, 303 (2d Cir. 1997)). *See also In re Adams*, 373 B.R. 116, 119-20 (10th Cir. BAP 2007) ("A debt is considered non-contingent where all events that cause liability

-7-

Case 22-10049-j7    Doc 54    Filed 09/08/22    Entered 09/08/22 15:24:57 Page 7 of 12

to arise occur pre-petition. It is only where some future event must transpire before liability arises that a debt is contingent." (citing *Reader*, 274 B.R. at 896)); *In re Salazar*, 348 B.R. 559, 568 (Bankr. D. Colo. 2006) ("[I]t is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy." (quoting *Mazzeo,* 131 F.3d at 303)*.*

A guarantee is a typical example of a contingent debt because a guarantor does not become liable until the primary obligor defaults. *In re Singh*, 588 B.R. 136, 140 (Bankr. E.D.N.Y. 2018) ("Typically, 'a claim based on a guaranty is contingent unless the loan is in default' or is dependent on the occurrence of a future event." (quoting *In re Benanti*, No. 15-71018, 2018 WL 1801194, at *6 (Bankr. C.D. Ill. April1 3, 2018))); *In re Martz*, 293 B.R. 409, 411 (Bankr. N.D. Ohio 2002) (observing that a guarantee is a "quintessential" type of contingent debt "because . . . the guarantor has no liability unless and until the principal defaults.") (citation omitted); *In re Pennypacker*, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990) ("The classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults.") (citation omitted). However, unless the guarantee requires the creditor to seek to collect against the primary obligor *before* seeking to collect against the guarantor, a guarantee becomes noncontingent immediately upon the primary obligor's payment default. *See In re Green*, 574 B.R. 570, 581 (Bankr. E.D.N.C. 2017) ("[O]nce the debt is in default, the contingency giving rise to absolute liability for the guarantor has occurred."); *Singh*, 588 B.R. at 140 ("In instances where there has been a default on an underlying debt, the 'liability on a guaranty becomes fixed and is no longer contingent because all predicates to enforcement have

occurred.'" (quoting *In re LightSquared, Inc.*, No. 12-12080 (SCC), 2014 WL 5488413, at *3 (Bankr. S.D.N.Y. Oct. 30, 2014))).[31]

New Mexico law treats a guarantee as a form of contract, applying the general rues of construction to interpret its meaning. *WXI/Z Southwest Malls v. Mueller*, 2005-NMCA-046, ¶ 10, 137 N.M. 343, 346, 110 P.3d 1080, 1083 ("A guaranty is a contract and we apply all of the general rules regarding the application and construction of contracts.") (citations omitted). Under the Vo Guarantee, Debtor "personally, severally and jointly, unconditionally guarantee[d] the performance of the Note . . . ." The Zelicoff/Frederickson Guarantee obligated Debtor to make all payments due under the Zelicoff/Frederickson Guarantee "[i]n the event that Anvil Development, LLC fails to make any payment . . . or fails to perform in any manner with regard to said Note . . . ."[32] The language in both the Vo Guarantee and the Zelicoff/Fredrickson Guarantee is clear and establishes that the guarantees are payment guarantees, which obligate the guarantor to pay upon the primary obligor's default, rather than collection guarantees, which condition liability of the guarantor on the creditor's first exhausting efforts to collect from the primary obligor.[33]

Neither the Vo Guarantee nor the Zelicoff/Frederickson Guarantee require the creditors to first seek payment from Anvil before seeking to collect from the guarantors following a default in Anvil's payment obligations. Debtor admitted that Anvil did not make any payments

---

[31] *See also In re Lloyd McKee Motors, Inc.*, 157 B.R. 484, 486 (Bankr. D.N.M. 1993) (finding that a debt based on a guarantee was noncontingent for purposes of claims estimation under § 502(c)(1) where the guarantors granted the creditor an absolute guarantee of the principal obligor's debt, relieving the creditor of the necessity to first pursue claims against the principal).
[32] Exhibit F.
[33] *See* 38 Am. Jur. 2d Guaranty § 14 (distinguishing between a guarantee of payment, which fixes the obligation of the guarantor upon the debtor's default, and a guarantee of collection, which requires the lender to look first to the primary obligor for payment. A guaranty of payment "is not subject to the condition that the lender first attempt to collect from the primary obligor.").

under the Vo Note or the Zelicoff/Fredrickson Note and did not testify about any defenses to liability under either note. Debtor therefore became obligated to make payment under the Vo Guarantee and the Zelicoff/Frederickson Guarantee upon Anvil's default under the Vo Note and the Zelicoff/Frederickson Note. Consequently, the debts represented by the Vo Guarantee and the Zelicoff/Frederickson Guarantee constitute noncontingent debts notwithstanding Debtor's characterization of those debts as contingent on his Amended Schedule E/F.

Finally, there is no dispute that the Vo Guarantee and the Zelicoff/Frederickson Guarantee are "liquidated" debts. Although the Code does not define the term "liquidated," courts uniformly agree that a debt is "liquidated" for § 109(e) purposes when the amount of the debt is determinable based on a simple mathematical computation or is readily ascertainable by reference to an agreement. *Adams*, 373 B.R. at 120; *In re Slack*, 187 F.3d 1070, 1073 (9th Cir. 1999), *as amended* (Sept. 9, 1999) (A debt is liquidated if "the amount of the debt is readily determinable."); *In re Knight*, 55 F.3d 231, 235 (7th Cir. 1995) ( "[A] debt is liquidated . . . '[i]f the amount of a claim has been ascertained or can readily be calculated . . . .'" (quoting 1 William I. Norton, Jr., *Bankruptcy Law & Practice* § 18:12 at 18-48 (2d ed. 1994))); *Reader*, 274 B.R. at 896 ("Whether a debt is liquidated turns on whether it is subject to 'ready determination and precision in computation of the amount due.'" (quoting *In re Sylvester,* 19 B.R. 671, 673 (9th Cir. BAP 1982))).

The Vo Note and Zelicoff/Frederickson Note fix the amount of those debts, and the Vo Guarantee and the Zelicoff/Frederickson Guarantee obligated Debtor to pay those debts upon Anvil's default. The terms of the Vo Note and the Zelicoff/Frederickson Note establish the face amount and the applicable interest rates. Debtor admitted that Anvil did not make any payments under either note.

The Court has computed the amounts due from the maturity date of each note through the day before Debtor filed his bankruptcy petition, including interest at the rates fixed in the notes. As of the petition date, the total amount due under the Vo Note and Vo Guarantee was $109,679.85, and the total amount due under the Zelicoff/Frederickson Note and Zelicoff/Frederickson Guarantee was $359,420.80.[34] Together, these liquidated, noncontingent debts total $469,100.65, which is well in excess of the $419,275 unsecured debt limit under § 109(e) applicable on the petition date.

## CONCLUSION

Debtor is ineligible to be a chapter 13 debtor under § 109(e). The Vo Guarantee and the Zelicoff/Frederick Guarantee constitute noncontingent, liquidated debts which together exceed the unsecured debt limit in § 109(e). Because these two debts alone exceed the unsecured debt limit for eligibility under § 109(e), the Court need not consider any of the Movants' alternative arguments, including whether the debt to Movants is unliquidated or partially liquidated, whether Debtor satisfies the regular income requirement, and whether Debtor has acted in bad faith. The Court will enter a separate order denying the Debtor's Motion to Convert.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 8, 2022

---

[34] *See* footnote 28 above for computations.

COPY TO:

Charles R. Hughson
Attorney for Sarah Beans, Yandell Beans, and Patty Lamb
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Leslie D. Maxwell
Attorney for Debtor
Maxwell & Gilchrist, P.C.
7007 Wyoming Blvd. NE, Ste A-1
Albuquerque, NM 87109